**Nos. 25-1322 & 25-1323**

IN THE

# United States Court of Appeals for the Third Circuit

IN RE IMERYS TALC AMERICA, INC., ET AL.,

*Debtors*.

IN RE CYPRUS MINES CORPORATION,

*Debtor*.

RMI INSURERS,

*Appellant*.

On Appeals from the United States District Court for the District of Delaware
Nos. 1:24-cv-001232, 1:24-cv-001233 (Hon. Thomas L. Ambro)

**MOTION TO DISMISS APPEALS AS MOOT AND FOR DAMAGES AND COSTS PURSUANT TO RULE 38**

Debtors-Appellees Imerys Talc America, Inc., Imerys Talc Canada Inc., Imerys Talc Vermont, Inc., and Cyprus Mines Corporation (together, "Debtors") respectfully move (1) to dismiss the above-captioned appeals and (2) for damages and costs pursuant to Rule 38 of the Federal Rules of Appellate Procedure. The above-captioned appeals are appeals from the district court's denial of requests for stays pending merits appeals in the district court. The above-captioned stay appeals should be dismissed as moot because the district court has now ruled on the underlying merits appeals. And because the stay appeals are frivolous—for the

reasons set forth in the Debtors' joint brief in this Court and the district court's merits opinion, this Court should award damages and costs, including attorney's fees.

## BACKGROUND[1]

These consolidated appeals concern repeated attempts by Appellant RMI Insurers ("RMI") to secure a stay during the pendency of its meritless appeals from the bankruptcy court's authorization of an asset sale under Section 363(b) of the Bankruptcy Code.

The Debtors filed Chapter 11 cases to manage potential tort liabilities related to talc that the Debtors mined, processed, and distributed to various companies, including Johnson & Johnson ("J&J"). The Debtors' goal of establishing a personal injury trust to deal with talc-related tort claims was complicated by entrenched disagreements with J&J, including regarding J&J's obligations to indemnify the Debtors for talc-related liability. *E.g.*, A1403-04 (Tr. Sept. 25, 2024 Hearing 17-18).

Ultimately, the Debtors, J&J, and various other stakeholders executed a Settlement Agreement. A80-309 (Settlement Agreement). A core element of that Agreement provides for the Debtors to sell to J&J certain rights—including contractual indemnification rights with respect to talc claims—that the Debtors

---

[1] A more complete factual and procedural background is included in the Debtors' Joint Brief ("JB"). ECF No. 54 at 6-18.

allege J&J owes them under various agreements the parties entered into over the course of decades. A98. The sale included a carveout to protect the rights of insurers, like RMI, that had made pre-petition payments to or on behalf of the Debtors for talc-related tort claims. The carveout unambiguously provides that the sale does *not* include any indemnification rights that are connected to pre-petition payments by third-party insurers such as RMI. A107, A114. Those rights are thus unaffected by the sale.

Despite this carveout, RMI objected to the buyback, claiming that (1) RMI possessed an interest in the Debtors' J&J indemnification rights being sold because RMI had made $36 million in pre-petition payments to or on behalf of the Debtors for talc-related tort claims, and (2) RMI was therefore entitled to "adequate protection" of its claimed property interest under 11 U.S.C. § 363(e). A1842-67. The bankruptcy court rejected RMI's argument and approved the sale under Section 363(b) of the Bankruptcy Code, entering identical orders in each Debtor's bankruptcy case on October 31, 2024. A1-79 (Order Approving Settlement Agreement); A1868-88 (Oral Opinion Tr.). The court explained that RMI at most had an interest in indemnification rights related to claims for which RMI made payments, but that the Settlement Agreement expressly carved out those indemnification rights from the buyback. A1884-85 (Oral Opinion Tr. 17-18). So

RMI had *no* interest in the property being sold, and thus no right to "adequate protection" under Section 363(e).

On November 7, 2024, RMI appealed the bankruptcy court's orders to the district court ("Merits Appeals"). A1890-95.[2] After filing its notices of appeal, RMI moved for a stay pending appeal in the bankruptcy court, A1896-905, which the bankruptcy court denied, A1975-82. RMI then moved for stays pending the appeals in the district court. SA1-24.

On February 3, 2025, the district court denied the stays. A2466 (D.I. 13);[3] Cyprus D. Ct. Case (No. 1:24-cv-001233) D.I. 16. Judge Ambro (sitting by designation as district judge) explained that RMI had shown "no risk of irreparable harm," and he expressed "doubts as to [RMI's] reasonable likelihood of success" in the Merits Appeals. *Id.* Judge Ambro explained that although "the terms of the Settlement Order" make clear that the settlement proceeds are "unrelated" to "claims previously paid or defended by [RMI]," RMI nevertheless appeared to be asserting "a 'contractual subrogation right' to any and all settlement proceeds received by the Debtors," but had failed to adduce any support for this "novel, expansive theory of

---

[2] Because an order approving the asset sale was entered by the bankruptcy court in both the Imerys Cases and in the Cyprus Case, RMI filed two notices of appeal. On April 4, 2025, those appeals were consolidated by the district court. *See* A2468 (D.I. 38).

[3] "D.I. __" refers to docket entries in D. Del. No. 1:24-cv-001232.

subrogation." *Id.* Because RMI's stay request had failed to provide *any* support for its "novel" and "expansive theory," Judge Ambro "advised" RMI "to include discussion of [its] subrogation rights in their merits briefs" and extended the due date for RMI's opening brief to "provid[e] additional time for careful treatment of this issue." *Id.*

RMI waited nearly three weeks, until February 21, 2025, before filing notices of appeal from the district court's stay denials. A2466 (D.I. 19); Cyprus D. Ct. Case D.I. 22. RMI did not ask this Court to expedite the briefing schedule. In the meantime, merits briefing in the Merits Appeals before the district court proceeded apace and was completed on April 25. *See* A2466, 2468 (D.I. 17, 39, 42) (merits briefing).

On August 22, 2025, the district court (Ambro, J.) issued an order in the Merits Appeals, affirming the bankruptcy court's authorization of the Section 363(b) asset sale. D.I. 45 ("Merits Opinion"). Judge Ambro explained that he "remain[ed] unpersuaded by Appellants' view of the subrogation rights at issue here," as RMI had "mostly recycle[d] their subrogation argument from their briefing on the motion to stay." *Id.* at 2. He noted that although his stay order had pointed out that "Appellants cited no authority" in their stay briefing "for their 'novel, expansive theory of subrogation'" and "'advised'" RMI to address the subrogation issue in its

merits briefing, RMI's "briefing on the merits fail[ed] to provide additional persuasive authority." *Id.* at 1-2 (quoting D.I. 13).

## ARGUMENT

### A. The Stay Appeals Should Be Dismissed As Moot

The Stay Appeals are from the district court's denials of RMI's requests for stays pending the Merits Appeals. The district court has now issued a ruling in the Merits Appeals, affirming the bankruptcy court's authorization of the Section 363(b) asset sale. The district court's resolution of the Merits Appeals renders RMI's stay requests to the district court—and by extension the Stay Appeals—moot. *See Cottillion v. United Refining Co.*, 781 F.3d 47, 62 (3d Cir. 2015) (disposition of appeal renders motion for stay moot). Accordingly, this Court should dismiss the Stay Appeals.

### B. This Court Should Award Damages And Costs Under Rule 38

The now-mooted appeals are frivolous. Accordingly, this Court should award damages and costs, including attorney's fees, to the Debtors. Fed. R. App. P. 38; *see Hilmon Co. (V.I.), Inc. v. Hyatt Int'l*, 899 F.2d 250, 253 (3d Cir. 1990) (awarding "attorney's fees and costs" to appellees in "frivolous" appeal).[4]

---

[4] The Debtors will submit the amount of the fee request once the bankruptcy court enters a post-effective date final order on fees, or, if this Court wishes, after the applicable interim fee applications are approved by the bankruptcy court. In the meantime, this Court can decide on the appropriateness of Rule 38 sanctions.

Rule 38 of the Federal Rules of Appellate Procedure allows this Court to award "just damages and single or double costs to the appellee" if it "determines that an appeal is frivolous." An appeal is frivolous when it is "wholly without merit"—meaning, there is "no possibility of success." *Nagle v. Alspach*, 8 F.3d 141, 145 (3d Cir. 1993). The standard is "purely objective," and so the appellant's "good or bad faith" is irrelevant. *Id.* When an appeal satisfies this objective standard, an award of damages and costs is appropriate because it is "patently unfair to allow appellees who have been damaged financially by a frivolous appeal to go uncompensated." *Id.*

These appeals are textbook cases of "frivolous" appeals. They are obviously and "utterly without merit," *Hilmon*, 899 F.2d at 253, for the many reasons discussed in the Debtors' Joint Brief and Judge Ambro's opinion. *See* JB29-47; D.I. 45. RMI's underlying argument to block the Section 363(b) sale is based on completely ignoring the explicit language of the Settlement Agreement and a theory of subrogation rights that finds zero support in the relevant contractual language or in legal principles. JB34-41; *see* A2466 (D.I. 13) (noting disconnect between RMI's argument and the language of the Settlement Agreement and lack of support for RMI's subrogation theory); D.I. 45 at 2 (noting RMI's "fail[ure] to counter" Debtors' argument that the "subrogation provision at issue here" does not lend any support to RMI's argument).

What's more, RMI had "ample notice" that its arguments to block the asset sale are without merit. *Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010). Both the bankruptcy court and the district court pointed out that RMI's arguments are directly refuted by explicit language in the Settlement Agreement. A1884-85 (Oral Opinion Tr. 17-18); A2466 (D.I. 13). Moreover, in denying RMI's requests for stays pending the Merits Appeals, Judge Ambro put RMI on notice regarding the absence of any support for its "expansive" and "novel" theory of subrogation. A2466 (D.I. 13). Yet, as Judge Ambro pointed out in his Merits Opinion, RMI essentially *ignored* his admonition to provide any support for its theory. D.I. 45 at 2.

RMI's arguments about irreparable harm are also frivolous. Those arguments are based on the risible theory that the Debtors would dissipate $505 million in the time it will take for the Merits Appeals to be decided. *See* JB44-45. Moreover, here again Judge Ambro put RMI on notice regarding other fatal flaws with its irreparable harm argument, including that purely "economic" harm does not constitute irreparable harm, A2466 (D.I. 13), but RMI simply recycled its district court stay brief, without even attempting to address Judge Ambro's points.

Finally, as the Debtors pointed out in their Joint Brief (at 50-51), RMI's total lack of urgency in pursuing the Stay Appeals made it highly likely that they would become moot before they were decided, which is precisely what happened once Judge Ambro ruled on the Merits Appeals. *Supra* at 6. After the district court denied

its stay requests, RMI waited almost three weeks before filing notices of appeal. *Compare* A2466 (D.I. 13) (Feb. 3 stay denial), *with id.* (D.I. 19) (Feb. 21 notice of appeal). And even after RMI got around to filing notices of appeal, it did not seek to expedite the briefing of the Stay Appeals, even as briefing in the Merits Appeals proceeded apace. All this underscores the dilatory and frivolous nature of these appeals—and makes the award of Rule 38 sanctions even more appropriate.

As a result of RMI's decision to pursue frivolous appeals, the Debtors were "forced unnecessarily to submit briefs" and were thus "forced to absorb the expense" associated with "an unworthy claim." *Hilmon*, 899 F.2d 253. The Imerys Debtors should be compensated for that unnecessary expense, especially considering that whatever funds they spend on this litigation could otherwise have been used to compensate talc claimants and other creditors.

## CONCLUSION

The appeals should be dismissed as moot and the Debtors should be awarded damages and costs, including attorney's fees.

Dated: September 4, 2025

Respectfully submitted,


*s/ Colin E. Wrabley*
Paul M. Singer
Luke A. Sizemore
Colin E. Wrabley
REED SMITH LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
(412) 288-3131
cwrabley@reedsmith.com

Kurt F. Gwynne
Jason D. Angelo
REED SMITH LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
(302) 778-7500

*Counsel for Debtor-Appellee Cyprus Mines Corporation*

*s/ Roman Martinez*
Roman Martinez
Blake E. Stafford
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

Kimberly A. Posin
Nicholas J. Messana
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 400
Los Angeles, CA 90071
(213) 485-1234

Mark D. Collins
Michael J. Merchant
Amanda R. Steele
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

*Counsel for Debtors-Appellees Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1893 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that the foregoing document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 and 14-point Times New Roman font.

*s/ Roman Martinez*
Roman Martinez

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2025, I filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Respectfully submitted,

*s/ Roman Martinez*
Roman Martinez